UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DERRELL AUSTIN,

                                 Plaintiffs,

     vs.                                            9:14-CV-41 (TJM/ATB)

DAVID ROCK and MAUREEN E. BOLL,

                                 Defendants.

---

DERRELL AUSTIN, Plaintiff pro se
LOUIS JIM, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that while plaintiff was incarcerated at Upstate Correctional Facility ("Upstate"), the defendants failed to protect him from sexual assault by his cell-mate and then defendant Rock "allowed repeated forms of retaliation" after the incident. (Complaint ("Compl.") ¶¶ 6, 7) (Dkt. No. 1). Plaintiff seeks "declaratory," injunctive, and substantial monetary relief. (Compl. ¶ 8).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 26). Plaintiff has responded in opposition to the motion. (Dkt. No. 31). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

# DISCUSSION

**I.     Facts**

Plaintiff alleges that on December 25, 2012, he was sexually assaulted by his cell-mate. (Compl. ¶ 6(1)).  Plaintiff states that prior to the assault, he made defendant Rock aware that plaintiff was "known to other prisoners" as a homosexual. (*Id.*) Plaintiff states that, several weeks prior to the assault, he provided defendant Rock with a copy of a letter to this effect, dated October 1, 2000, which was "placed in plaintiff's file by his corrections counselor" in October of 2000. (Compl. ¶ 6(2)).  Plaintiff claims that defendant Rock ignored plaintiff's "warning." (*Id.*)

Plaintiff also claims that on December 17, 2012, he wrote to defendant Boll regarding this "security matter," but that she also chose to ignore plaintiff's warning. (Compl. ¶ 6(3)).  Plaintiff claims that both of the defendants had the ability to prevent the sexual assault, but "refused" to do so and then made efforts to "cover it up" and place plaintiff "back at risk." (Compl. ¶ 6(4)).  Plaintiff claims that both defendants "knew in advance" that plaintiff was in danger and the incident was foreseeable, based on "the environment, the violent history of the facility, prior "like" situations, and plaintiff's "pleas" to staff for weeks prior to the incident. (Compl. ¶ 6(5)).

Plaintiff does not allege facts supporting his "retaliation" claim until the section of the complaint entitled "Causes of Action." (Compl. ¶ 7).  Plaintiff's first cause of action alleges failure to protect against both defendants, with "deliberate indifference" toward plaintiff's sexual orientation and the danger it posed to housing plaintiff in the same cell with another inmate. (*Id.* – First Cause of Action).  Plaintiff's second cause of

action states that defendant Rock "allowed repeated forms of retaliation after the incident to take place under his direction." (*Id.* – Second Cause of Action). Plaintiff states that on December 27, 2012, the inmate who sexually assaulted plaintiff was "given full access to plaintiff's cell property where the crime took place," and plaintiff was "forced" by defendant Rock to live in a cell that was three cells away from the perpetrator of the assault, who verbally "tormented" plaintiff. (*Id.*)

## II. **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.*, 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## III. <u>Exhaustion of Administrative Remedies</u>

### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite

5

to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* at § 701.8.

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[1] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion

---

[1] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

requirement. *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish either that defendants were estopped from asserting the defense or that special circumstances excused exhaustion). *See, e.g.*, *Heyliger v. Gebler*, 624 F. App'x 780, 782-83 (2d Cir. 2015); *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011). *See also Morgan v. Ward*, No. 1:14-CV-7921, 2016 WL 427913, at *5 & n.4 (S.D.N.Y. Feb. 2, 2016) (noting the possibility that *Woodford* may have "called into question the *Hemphill* exceptions, but that the Second Circuit continues to recognize that compliance with the exhaustion requirement may be "excused" in certain circumstances) (citing *Heyliger, supra*).[2]

---

[2] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand,

**B.     Application**

Defendants argue that plaintiff has failed to exhaust his administrative remedies with respect to either of his causes of action. In support of their motion, defendants have filed the declaration of Jeffrey Hale, the Assistant Director of the Inmate Grievance Program ("IGP"). (Hale Decl. ¶ 1) (Dkt. No. 26-2). As the IGP director, Mr. Hale is the custodian of records maintained by CORC. (*Id.*) Assistant Director Hale states that on September 8, 2015, he searched the CORC database for the appeals from plaintiff that were received by the CORC from November 16, 2012 until December 21, 2012. (Hale Decl. ¶ 6). A copy of the computer print-out has been attached as Exhibit A to Assistant Director Hale's declaration. (Hale Decl. ¶ 6 & Ex. A).

A review of the appeals listed shows that plaintiff did not file any appeals to the CORC after December 21, 2012, prior to his transfer to another facility in early 2013. (Hale Decl. ¶ 8). The next grievance that plaintiff appealed to the CORC was dated May 3, 2013 while he was incarcerated at Elmira Correctional Facility. (*Id.*) Plaintiff never filed an appeal of a grievance alleging that either of these defendants or any prison official failed to protect plaintiff from the December 25, 2012 sexual assault, nor did he ever file any appeal of a grievance alleging "retaliation" by defendant Rock after the alleged assault. (Hale Decl. ¶¶ 9-10).

Plaintiff argues that he did try to file a grievance and refers to the documents that he produced at his May 11, 2015 deposition as evidence of the grievance and other

---

the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

8

letters that he wrote to DOCCS officials at the facility and in Albany. (Dkt. No. 31 at CM/ECF p.6). Defendants have filed the transcript of plaintiff's deposition as Exhibit 1 to AAG Louis Jim's Declaration. (Dkt. No. 26-7). Copies of the letters that plaintiff brought to his deposition are attached as exhibits to the deposition transcript. (Jim Decl. ¶ 4 & Ex. 1 & Pl.'s Exs. 1-18 (marked at the deposition)).

Plaintiff claims that he tried to file a grievance, and that the record "clearly shows" that the grievance was "stamped," indicating that the grievance was received, but that there has been no answer to the grievance. (Dkt. No. 31-1 at CM/ECF p.7). Actually, a reading all of plaintiff's exhibits shows that the document to which he refers is a January 10, 2013 letter that states that is addressed "To: I.G.R.C. Office." (Dep. Pl.'s Ex. 3) (Dkt. No. 26-7 at 108-111). The subject line states "Deliberate Indifference Leads to Assault, Humiliation & Continued Retaliatory Actions." (*Id.*) The contents of the letter do complain about the December 25, 2012 incident. (*Id.*) The document has two stamps on the first page: one stamp states that the document was "Received" in the "Commissioner's Office" on January 15, 2013, and the second stamp indicates that the letter was "Received" by "Inmate Grievance" on the same day – January 15, 2013. (*Id.*)

In his response to defendants' motion for summary judgment, Plaintiff states that defendant Rock "has never responded to plaintiff's grievance." (Dkt. No. 31-1 at 7). Plaintiff alleges that he also reported the incident to the Inspector General's Office, and there was a full investigation.³ Thus, plaintiff alleges that defendants were "well aware

---

³ Plaintiff also claims that his grievance should have gone directly to the Superintendent and not to the I.G.R.C. (Dkt. No. 31-1 at 6). Although plaintiff cites § 701.2(e), (f), these are definitions. Section 701.2(e) defines "Harassment Grievances" as those that allege employee misconduct meant to

9

of the plaintiff's claim," and they should not be allowed to raise a defense of failure to exhaust. (*Id.*)

However, plaintiff's Deposition Exhibit 3 (discussed above) must be read in conjunction with another of plaintiff's deposition exhibits. Plaintiff's Exhibit 4 is a letter dated January 24, 2013, addressed to plaintiff, from Karen Bellamy, the Director of the IGP. (Dkt. No. 26-7 at 112). In her letter, IGP Director Bellamy states that the Commissioner "has referred your January 10, 2013 letter to me for response. The last page of plaintiff's January 10, 2013 letter notes that a copy was sent to the Commissioner's Office. The stamp indicating that the document was received by "Inmate Grievance" appears to be related to the document's receipt by IGP Director Bellamy from the Commissioner's office, not as plaintiff would argue, its receipt by the IGRC Office to which the letter was addressed. This is consistent with the fact that the document has no grievance number written or stamped on it.

In her letter, IGP Director Bellamy confirms that "contact with the facility administration reveals that you did not file a grievance on January 10, 2013 regarding a December 25, 2012 incident and the investigation." (Dkt. No. 26-7 at 112). IGP Director Bellamy states that plaintiff's concerns were being addressed by the Inspector

---

annoy, intimidate, or harm and inmate. Section 701.2(f) defines "Unlawful discrimination grievances," as those grievances that allege acts or policies which adversely affect individuals based on race, national origin, sex, sexual orientation, disabling conditions or political beliefs. Even assuming that plaintiff's grievance would fit into one of those two categories - grievances alleging harassment and/or unlawful discrimination - he was still required to file his grievance with the IGP. The grievance is then given a number and referred to the Superintendent. 7 N.Y.C.R.R. §§ 701.8(b), 701.9(b). Each of these sections provides that the inmate must follow the procedures in section 701.5(a). The inmate may not send the grievance directly to the Superintendent himself. The grievance must be given a number first.

General's Office in #SCU-12-0568, which was "currently pending investigation."[4] IGP Director Bellamy then informed plaintiff that the IGP provided the appropriate procedure for the resolution of his grievance, and that there was "no provision for an inmate to refer grievances directly to Central Office." Plaintiff was advised to address his specific concerns to the IGP Supervisor. (*Id.*)

When IGP Director Bellamy referred to the "Central Office," she was referring to the Commissioner's Office, not the CORC. It is clear that plaintiff understood what IGP Director Bellamy was telling him to do because there is another letter in plaintiff's exhibits dated February 1, 2013, addressed to the "IGRC Office @ Upstate CF." (Pl.'s Ex. 13) (Dkt. No. 26-7 at 128). The subject-line of the letter states "I.G.P. Supervisor Scott Woodward not Filing Grievances." In the February 1, 2013 letter, plaintiff references IGP Director Bellamy's letter stating that plaintiff's January 10, 2013 grievance was not "on file at [Upstate.]" Aside from accusing IGP Supervisor Woodward of failing to file plaintiff's grievance, plaintiff also states that he "simply" wanted his January 10, 2013 grievance filed and was attaching another copy.

Plaintiff also stated that "[i]n the event it is not filed I'll simply proceed to the next level without the facility decision due to being denied to use [sic] the grievance process by Upstate Corrections staff." (*Id.*) Thus, plaintiff was also aware that the

---

[4] The fact that the Inspector General's Office was investigating a complaint made by plaintiff, does not excuse plaintiff from completing the proper grievance procedures. *See Dabney v. Pegano*, 604 F. App'x 1, 4 (2d Cir. 2015) (IG's investigation of plaintiff's claims does not constitute a special circumstance excusing exhaustion through the grievance procedure); *McPherson v. Rogers,* No. 9:12-CV-766, 2014 WL 675830, at *7 (N.D.N.Y. Feb. 21, 2014) (even if the Inspector General investigates the inmate's complaint, but provides an unfavorable result, plaintiff must still appeal the decision to the CORC) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 290-91 (N.D.N.Y. 2013)).

11

regulations provide that if he did not get a response from the IGRC, he would be able to appeal to the next level. *See* 7 N.Y.C.R.R. § 701.6(g)(1)(b)(ii)(2).[5] On February 3, 2013, plaintiff wrote another letter to IGP Supervisor Woodward, inquiring about four "complaints" that he sent to the IGP, and to which he never received responses. (Pl.'s Ex. 14) (Dkt. No. 26-7 at 129).

While there are letters indicating that plaintiff knew that he could appeal the denial of a grievance or even failure to obtain a response to his grievance, plaintiff did not avail himself of this opportunity when the IGP Supervisor allegedly failed to file plaintiff's grievances. Assistant Director Hale's records show that plaintiff never appealed these grievances to the CORC, and therefore, he failed to exhaust his administrative remedies.

In *Heyliger v. Gebler*, the Second Circuit rejected the plaintiff's argument that his administrative remedies were rendered "unavailable" when the grievance program supervisor threw plaintiff's grievance form into the garbage "before it could be processed." 624 F. App'x at 782. The court specifically cited to 7 NYCRR § 701.6(g)[6] and stated that "when Heyliger did not receive a written response from the IGRC, appeal to the Superintendent was still an available remedy." *Id.* In addition, the Second Circuit also found that a non-defendant's destruction of plaintiff's grievance did not estop the defendants from raising the defense of exhaustion when the defendant or

---

[5] This section provides, inter alia, that "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(1)(b)(ii)(2).

[6] At the time of the incident in *Heyliger* the relevant section was codified at section 701.8 (2005)).

defendants were not themselves involved in the destruction of the grievance form. *Id.*

Plaintiff in this case appears to claim that IGP Supervisor Woodward failed to file his grievances. (Pl.'s Ex. 14) (Dkt. No. 26-7 at 129). Even if this were true, based on the Second Circuit's decision in *Heyliger*, defendants Rock and Boll would still be able to assert the defense of failure to exhaust. It is clear that plaintiff never filed a grievance with respect to his claims of "retaliation" against defendant Rock. In plaintiff's complaint, he alleges that defendant Rock allowed forms of "retaliation" to occur after the incident. (Compl. ¶ 7 – Second Cause of Action). The only facts contained in this paragraph are that defendant Rock allowed the perpetrator access to plaintiff's property and that plaintiff was required to live three cells away from the perpetrator who was verbally tormenting plaintiff. (*Id.*)

Instead, the court notes that plaintiff wrote a letter, dated January 2, 2013 in which he extends an apology to defendant Rock and states that the perpetrator did not take anything of value "nothing I can't replace." (Pl.'s Ex. 18) (Dkt. No. 26-7 at 136). Plaintiff then asks that defendant Rock move the plaintiff to another area because the perpetrator was still taunting him, notwithstanding the cell separation. There is no indication, nor does plaintiff produce any grievances that complain about defendant Rock causing either of these problems or retaliating against plaintiff for any form of constitutionally protected activity. While it is the defendants' burden to show that plaintiff failed to exhaust, they have done so by submitting the declaration of IGP Director Hale showing that none of these facts appeared in appeals to the CORC, and plaintiff has failed to cite any valid excuse for his failure to do so.

As stated above, plaintiff is well-aware of the grievance procedures and the requirement that a grievance be appealed to the CORC, even in the absence of a timely decision from the IGRC or the Superintendent. In a slightly more than one month period while he was at Upstate, prior to the incident in question, plaintiff filed six grievances that he appealed to the CORC. (Hale Decl. Ex. 1) (Dkt. No. 26-2 at 7) (UST-50880-12 (Filed Nov. 26, 2012); UST-50913-12 (Filed Nov. 28, 2012); UST-50928-12 (Filed Dec. 3, 2012); UST-50969 (Filed Dec. 7, 2012); UST-50998 (Filed Dec. 11, 2012); and UST-51052 (Filed Dec. 21, 2012)). These grievance appeals also contradict plaintiff's apparent claim that IGP Supervisor Woodward was not "filing" his grievances. Plaintiff has failed to exhaust his administrative remedies, and he has failed to show that he meets any of the exceptions to the exhaustion requirement. This court must, therefore, recommend dismissal for failure to exhaust.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 26) be **GRANTED**, and the complaint be **DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 28, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge